**In the Matter of Walter N. HUNTER, Debtor–Appellee.**

**Appeal of SHIPSHEWANA STATE BANK.**

**No. 91–3462.**

United States Court of Appeals, Seventh Circuit.

Argued June 2, 1992.

Decided July 28, 1992.

**300**

Grant F. Shipley (argued), Miller, Carson & Boxberger, Fort Wayne, Ind., for appellant.

Michael M. Yoder (argued), Kendallville, Ind., for debtor-appellee.

Before BAUER, Chief Judge, and COFFEY and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

After Walter Hunter was granted a Chapter 7 bankruptcy discharge, Shipshewana State Bank filed with the bankruptcy court a Motion to Lift Permanent Injunction and Stay. The Bank sought permission to sue Mr. Hunter and his wife in state court, obtain a joint judgment, and assert it against property which the Hunters hold as tenants by the entirety. The bankruptcy court denied the Bank's motion, and the district court affirmed. For the following reasons, we agree with both courts and affirm.

## I

## BACKGROUND

### A

In January 1973, Mr. Hunter and his wife, Dixie Hunter, purchased real estate in LaGrange, Indiana (the LaGrange property), as tenants by the entirety. Subsequently, Mr. Hunter borrowed several thousand dollars [1] from Shipshewana State Bank (the Bank) in connection with the purchase of personal property. The Bank required Mrs. Hunter to sign as a guaranty on the loan, but did not obtain any security interest in or mortgage upon the LaGrange property. Thus, the debt was unsecured and unrelated to the LaGrange property.

### B

On September 12, 1989, Mr. Hunter, individually, filed a petition for relief under Chapter 7 of the Bankruptcy Code. On his Schedule A statement of liabilities, Mr. Hunter included his indebtedness to the Bank. Upon his Schedule B statement of property owned by the debtor, Mr. Hunter included the LaGrange property. He estimated the value of the property to be $60,-000. On Schedule B–4, Mr. Hunter claimed the LaGrange property as exempt pursuant to Ind.Code § 34–2–28–1(a)(5). The Bank received notice of the proceedings and of the contents of Mr. Hunter's petition and schedules. Neither the trustee, the Bank, or any other creditor objected to the ex-

---

**1.** The amount is apparently in dispute but is    irrelevant to this appeal.

emption. The bankruptcy court granted the exemption, and the trustee therefore took no action to sell the LaGrange property or otherwise transfer interest in it to the Bank or other creditors. On December 22, 1989, the bankruptcy court discharged Mr. Hunter. Under 11 U.S.C. § 524, this discharge enjoined the Bank from pursuing its unpaid claim against Mr. Hunter.

On April 3, 1990, the Bank filed with the bankruptcy court a Motion to Lift Permanent Injunction and Stay. The Bank sought permission from the bankruptcy court to file suit in state court against both Mr. and Mrs. Hunter in order to reduce its claim against them to judgment and assert a lien against the LaGrange property. On December 11, 1990, the bankruptcy court denied the Bank's motion. 122 B.R. 349. In a careful opinion, the court analyzed the interaction between Indiana property law, the law under the 1898 Bankruptcy Act, and the changes brought about by the 1978 Bankruptcy Code and 1980 amendments to the Indiana Code. The court concluded that, under the current scheme, the LaGrange property entered the bankruptcy estate through 11 U.S.C. § 541, was properly exempted by Ind.Code § 34-2-28-1(a)(5), and thus could not form the jurisdictional basis of or otherwise justify a post-discharge proceeding against Mr. Hunter. The Bank moved the court to alter or amend this judgment, but the court denied this motion.

### C

The Bank appealed the bankruptcy court's judgment to the district court. On July 11, 1991, the district court affirmed the judgment of the bankruptcy court. The district court's opinion tracked the reasoning of the bankruptcy court; the district court found that the LaGrange property entered the bankruptcy estate, was properly exempted, and thus Mr. Hunter's discharge had the effect of enjoining the Bank from proceeding against Mr. Hunter in the manner proposed. Subsequently, the Bank filed with the district court a motion to alter or amend its judgment. On September 17, 1991, the district court denied the

Bank's motion. The Bank timely filed a notice of appeal.

### II

### LEGAL FRAMEWORK

### A

■ Indiana continues to recognize the common law form of marital property ownership—tenancy by the entirety. It is based upon the ancient common law principle that, upon marriage, each spouse loses his or her individual identity, and the two people become one entity. This entity, rather than either spouse, holds title to entirety property. *State v. Union Bank & Trust Co.*, 177 Ind.App. 632, 380 N.E.2d 1279, 1280 (1978) ("The law in this State is clear that property held in a tenancy by the entireties is held by a single legal entity created by the ... unity of husband and wife."). While neither spouse claims title individually, each spouse has an undivided interest in the whole. *Heffner v. White*, 113 Ind.App. 296, 45 N.E.2d 342, 346 (1942) ("[A] tenancy by the entirety is vested in two persons only, who in law are regarded as only one, and each of whom becomes seised of the estate as a whole."). Neither spouse can transfer or encumber the property by himself or herself; it takes a joint act to affect the property. *Union Bank*, 380 N.E.2d at 1280 ("[O]ne spouse cannot convey or encumber the property so held without the consent of the other."). This form of property interest is not limited to the family residence; a husband and wife can own any real estate as tenants by the entirety.

### B

· Under section 70a(5) of the Bankruptcy Act of 1898, the bankruptcy estate included

> property, including rights of action, which prior to the filing of the petition [the bankrupt] could by any means have transferred or which might have been levied upon and sold under judicial process ... or otherwise seized, impounded, or sequestered....

11 U.S.C. § 110(a)(5) (1970). This provision limited the property of the estate to property that the debtor could transfer or that could be seized through judicial process. Thus, property that was held by spouses as tenants by the entirety did not enter the bankruptcy estate of one spouse individually filing bankruptcy, because that individual spouse did not have the power to transfer the property, and creditors with judgments against the individual spouse could not seize the property. *Reid v. Richardson*, 304 F.2d 351, 353 (4th Cir.1962) ("It is too clear to admit of doubt that an estate by the entireties does not pass to the trustee in bankruptcy of one of the tenants...."). Because the property never became a part of the estate, the bankruptcy trustee never had the ability to act upon it—*e.g.* sell it or transfer it—for the benefit of creditors.

Under this pre-Code scheme, there was a potential for legal fraud against joint creditors of a husband and wife. The couple could shelter their assets as unencumbered entirety property, then one spouse could file bankruptcy and obtain a release from his share of all joint debts without exposing the entirety property to any claims because it would not enter the bankruptcy estate. After bankruptcy, all joint creditors could sue only the remaining spouse, a judgment against whom would be ineffective as against the entirety property. This was the situation recognized by the Fourth Circuit in *Reid*, 304 F.2d at 354–55:

> The effect of the coincidental interrelation of these rules of law is to allow the tenants by the entireties to keep the entireties property secure from the claims of their creditors even though that property was never available in bankruptcy for the satisfaction of those claims.

Two procedures arose to counteract this potential for fraud, one in the bankruptcy courts, and one in state courts. First, the bankruptcy courts allowed a joint creditor to request a stay of the entry of discharge in order to allow the creditor to sue both spouses jointly in state court and, thereby, reduce the claim to a judgment lien that the creditor then could press against the entirety property regardless of discharge.[2] Second, several state courts (including Indiana courts) interpreted the joint-debt transaction as creating three liabilities: one of each spouse, and one of the marital unit (the entirety). Thus, even though an individual spouse's discharge might extinguish that spouse's liability on the debt, the entirety property was still vulnerable if the creditor could obtain a judgment against the entirety.[3] As will be discussed below, this state law bypass depended upon both the fact that entirety property never entered the bankruptcy estate, and the fact that, at least up until 1970, the effect of discharge was merely to create an affirmative defense to post-discharge suit, not to enjoin such suit.

### C

The Bankruptcy Code of 1978 (the Code) changed the legal landscape. Most significantly for the present case, the Code expanded the definition of property included in the debtor's estate. Under section 541(a)(1), the estate now includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This provision eliminated the requirement that the property be transferable or subject to process in order to enter the estate:

> Under the Bankruptcy Act it was additionally necessary under Section 70a(5) to determine whether under local law the debtor's interest in a tenancy by the entirety, joint tenancy, or the like could by any means have been transferred or levied upon or seized at the time the petition was filed. If the debtor's interest met

---

**2.** *See, e.g., Davison v. Virginia Nat'l Bank (In re Davison)*, 493 F.2d 1220, 1221–22 (4th Cir.1974); *Phillips v. Krakower*, 46 F.2d 764, 765 (4th Cir. 1931); *Rensenhouse Elec. Supply Co. v. Magee (In re Magee)*, 415 F.Supp. 521, 524–25 (W.D.Mo. 1976); *cf. Frederick County Nat'l Bank v. Lazer-*

*ow*, 139 B.R. 802, 807 (D.Md.1992) (declining to follow this practice under the Code).

**3.** *See, e.g., Edwards & Chamberlin Hardware Co. v. Pethick*, 250 Mich. 315, 230 N.W. 186, 187–88 (1930); *Smith v. Beneficial Fin. Co.*, 139 Ind. App. 653, 218 N.E.2d 921, 923 (1966).

any of these requirements, and was not exempt property, it would pass to the trustee as an asset of the estate. These requirements have been omitted under the Code.

4 *Collier on Bankruptcy* ¶ 541.07[8][a] (1992). As will be discussed below, this change had the effect of allowing entirety property to enter the bankruptcy estate.[4]

The Code also provided a means by which the bankruptcy trustee could administer entirety property. The Code provides that the trustee may sell both the debtor's *and* the spouse's interest in such property, subject to certain conditions. Under section 363(h), "the trustee may sell both the estate's interest, ... and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety...." Before such a sale of entirety property, the trustee must give the non-debtor spouse the opportunity to purchase the property at the proposed sale price. 11 U.S.C. § 363(i). And, after the trustee sells the entirety property, an appropriate portion of the proceeds is immediately given to the non-debtor spouse. 11 U.S.C. § 363(j). The other portion, however, is available for distribution to joint creditors.

The Code also revised the exemption scheme. The relevant statutory section is as follows:

§ 522. Exemptions

 . . . .

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection.... Such property is—

(1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative,

(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180–day period than in any other place; and

(B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.

11 U.S.C. § 522(b). Under this section, two alternative sets of exemptions are created. Subsection 522(b)(1) affords the debtor the federal exemptions set forth in subsection 522(d); alternatively, under subsection 522(b)(2), the debtor may choose the exemptions provided by his domicile state along with exemptions provided by federal, non-Code bankruptcy law (*e.g.*, the social security payment exemption, 42 U.S.C. § 407, and veterans benefits exemption, 38 U.S.C. § 1970(g)). As the statute reveals, debtors who choose the state and federal non-Code exemptions can also exempt

any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.

11 U.S.C. § 522(b)(2)(B).[5] The Code also allows individual states to take this choice away from the debtor by "opting out" of the federal exemptions altogether. *See* 11 U.S.C. § 522(b)(1). Subject to exceptions that are not relevant to this case, section 522(c) provides that property exempted un-

---

**4.** *See infra* nn. 7–8 and accompanying text.

**5.** The operation of section (b)(2)(B) will be discussed in greater detail *infra* at n. 12 and accompanying text.

der this section is not liable for any pre-petition debt.

## D

In 1980, Indiana amended its statutes governing real estate exemptions and "opted out" of the Code exemptions:

### 34–2–28–0.5 Exemptions allowed and prohibited

In accordance with section 522(b) of the Bankruptcy Code of 1978 (11 U.S.C. 522(b)), in any bankruptcy proceeding, an individual debtor domiciled in Indiana:

(1) is not entitled to the federal exemptions as provided by section 522(d) of the Bankruptcy Code of 1978 (11 U.S.C. 522(d)); and

(2) may exempt from the property of the estate only that property specified by Indiana Law.

Ind.Code § 34–2–28–0.5. The legislature also amended the existing exemption statute to create what appears to be a complete exemption, in individual bankruptcies, for property held by the entirety:

### 34–2–28–1 List of exemptions; limitations

(a) The following property of a judgment debtor domiciled in Indiana is not subject to levy or sale on execution or any other final process from a court, for a judgment founded upon an express or implied contract or a tort claim:

. . . .

(5) Any interest the judgment debtor has in real estate held as a tenant by the entireties on the date of the filing of the petition for relief under the bankruptcy code, unless a joint petition for relief is filed by the judgment debtor and spouse, or individual petitions of the judgment debtor and spouse are subsequently consolidated.

Ind.Code § 34–2–28–1(a)(5).

## E

The effect of a discharge is governed by section 524 of the Code, which, from 1979 until 1984, provided in relevant part:

6. *See supra* n. 3 and accompanying text.

### § 524. Effect of discharge

(a) A discharge in a case under this title—

. . . .

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, to collect, recover, or offset any such debt as a personal liability of the debtor, *or from property of the debtor*, whether or not discharge of such debt is waived; . . . .

11 U.S.C. § 524 (1979) (emphasis added). In 1984, Congress deleted the underlined phrase—"or from property of the debtor"—from the statute. Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, title III, subtitle A, § 308(a), 98 Stat. 333, 354 (1984).

## III

## ANALYSIS

Shipshewana State Bank submits that the combined effect of the 1978, 1980, and 1984 changes in federal and state bankruptcy law is to return the Indiana joint creditor to the same vulnerable position it was in before 1978: entirety property cannot be sold or otherwise administered by the bankruptcy trustee and, thus, the joint creditor cannot get relief within bankruptcy. In order to prevent legal fraud, the Bank argues, the joint creditor must be allowed to pursue the same sort of post-discharge claim against the couple in state court that was used in the pre-Code era described previously.[6] The bankruptcy court and the district court both rejected this argument. Both courts determined that the entirety property entered the bankruptcy estate under section 541 of the Code, was exempted by operation of section 34–2–28–1(a)(5) of the Indiana Code, and that section 524 of the Code had the effect of enjoining any post-discharge state court proceeding. Both courts appreciated the potential in Indiana for the same type of legal fraud that was possible under the old Bankruptcy Act, but attributed the result—the complete exemption of entirety

property—to the Indiana legislature rather than federal bankruptcy law.

On appeal, the Bank argues that the district court erred in four respects: (A) in concluding that the property entered the bankruptcy estate; (B) in concluding that the property was exempted by Ind.Code § 34–2–28–1; (C) in not allowing the Bank to follow the old Indiana practice of post-discharge proceedings against the debtor; and (D) in failing to recognize that discharge does not bar proceedings quasi in rem. We shall discuss each of these contentions.

### A

■ The Bank first suggests that the bankruptcy court and district court erred in concluding that Indiana entirety property enters the bankruptcy estate of an individual spouse. Section 541(a)(1) provides that the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). However, the Bank argues that, under Indiana law, neither spouse has any divisible "interest" in entirety property. Thus, the Bank concludes, such entirety property cannot enter the bankruptcy estate. In support of this contention, the Bank relies upon *In re Jeffers*, 3 B.R. 49, 56 (Bankr.N.D.Ind.1980), in which a bankruptcy court in Indiana concluded that "real estate held as tenants by the entirety in Indiana does not become property of the estate pursuant to Section 541 of the Code." *Jeffers* based its conclusion in large part upon the premise that "Indiana holds that one spouse also lacks the ability to claim an exemption from execution in entireties property." *Id.* at 53. As the bankruptcy court and the district court both noted, *Jeffers* was decided shortly *before* Indiana amended section 34–2–28–1 to provide an individual spouse with the ability to claim an exemption from execution in entirety property. Act of March 3, 1980, P.L. 196 sec. 2, 1980 Ind. Acts 1625. The amendment undermined the logic of *Jeffers;* by recognizing an individual exemption, Indiana recognized the validity of an individual interest in entirety property.

In enacting section 541, Congress intended to include within the bankruptcy estate a debtor's interest in entirety property. This is revealed by legislative history.[7] It is also evident in the operation of sections 363 and 522 which, when read together, allow the trustee to make the entirety property available to satisfy claims of joint creditors. Several courts addressing this issue have come to the same conclusion.[8] Thus, we must reject the Bank's argument and conclude that the bankruptcy court and the district court were correct in determining that entirety property is brought into the bankruptcy estate by operation of section 541.

---

**7.** The House Reports note that the Code was intended to include property held by the debtor as a tenant by the entirety:

> Under the proposed Act, the undivided interest of a spouse who is a debtor in a case under the Act is property of the estate. This is contrary to the present Act which looks to state law to determine what happens with respect to property jointly owned by husband and wife.

H.R. Doc. No. 137, 93d Cong., 1st Sess. 195 (1973), *reprinted in Collier on Bankruptcy* Appendix V.2 at 195.

> The bill also changes the rules with respect to marital interests in property.... With respect to other co-ownership interest[s], such as tenancies by the entirety, joint tenancies, and tenancies in common, the bill does not invalidate the rights, but provides a method by which the estate may realize on the value of the debtor's interest in the property while protecting the other rights. The trustee is permitted to realize on the value of the property by being permitted to sell it without obtaining the consent or a waiver of rights by the spouse of the debtor or the co-owner, as may be required for a complete sale under applicable State law.

H.R.Rep. No. 595, 95th Cong., 1st Sess., Appendix I at 177 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6137 (footnotes omitted).

**8.** *See Sumy v. Schlossberg,* 777 F.2d 921, 925 (4th Cir.1985) ("§ 541 now includes the debtor's interest in entireties property as part of the estate"); *Liberty State Bank & Trust v. Grosslight (In re Grosslight),* 757 F.2d 773, 775 (6th Cir. 1985) ("It is now established that [section 541(a)] brings entireties property into the bankruptcy estate."); *Napotnik v. Equibank & Parkvale Sav. Ass'n,* 679 F.2d 316, 318 (3d Cir.1982) ("This definition is certainly broad enough to include an individual debtor's interest in property held as a tenant by the entirety.").

## B

■ Relying on *In re Marino*,[9] the Bank next suggests that the bankruptcy court and district court erred in concluding that a debtor can exempt entirety property through Ind.Code § 34–2–28–1. We pause at the outset to address a threshold problem. It is important to note that the Bank's argument here is not a challenge to the bankruptcy court's *grant* of an exemption to the entirety property, but a challenge to *the effect* of that exemption upon its proposal to proceed, after discharge, quasi in rem against the property. The Bank cannot challenge the grant of an exemption at this stage in the litigation because the Bank failed to object to the claimed exemption in the bankruptcy court at the appropriate time. *See* 11 U.S.C. § 522(*l*); Bankruptcy Rule 4003(b). Also, the Bank's argument here is not that section 34–2–28–1(a)(5) is unconstitutional because it is limited to bankruptcy situations and therefore violates the mandate for geographic uniformity in bankruptcy law.[10] The Bank would like to make that argument, but, as the district court noted, the Bank failed to raise this issue before the bankruptcy court and noted it in only a perfunctory manner in the district court. Therefore, it is waived. The Bank has also waived any other possible constitutional objections that it might advance with respect to this Indiana provision.[11]

■ The substance of the Bank's argument is that Ind.Code § 34–2–28–1(a)(5) merely codifies Indiana's common law immunity of entirety property from execution by an individual creditor. There are several problems with the Bank's suggested characterization. First, it violates the plain wording of the statute. Consider the entire statutory section in context:

**34–2–28–1  List of exemptions; limitations**

(a) The following property of a judgment debtor domiciled in Indiana is not subject to levy or sale on execution or any other final process from a court, for a judgment founded upon an express or implied contract or a tort claim:

(1) Real estate or personal property constituting the personal or family residence of the judgment debtor or a dependent of the judgment debtor, or estates or rights in that real estate or personal property, of not more than seven thousand five hundred dollars ($7,500). The exemption under this subsection is individually available to joint judgment debtors concerning property held by them as tenants by the entireties.

9. In *In re Marino*, 27 B.R. 282 (Bankr.N.D.Ind. 1983), a debtor who owned entirety property with his spouse, and had obtained a Chapter 7 discharge, sought to avoid judicial liens against the entirety property. Section 522(f) provides that "the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under [section 522(b)]." Since Indiana has "opted out" of the federal exemptions, the relevant exemption to which the debtor would have been entitled was the same as the one at issue in the present case—the exemption provided by Ind. Code § 34–2–28–1(a)(5). The bankruptcy court reasoned that the Indiana exemption must not truly be an exemption, otherwise, under section 522(f), a single spouse filing bankruptcy could wipe out all judicial liens against the entirety property. 27 B.R. at 283. Consequently, to avoid this result, the *Marino* court decided to characterize the provision as an attempt by the Indiana legislature to codify the common law immunity granted to entirety property.

10. *See* U.S. Const. art. I, § 8; *In re Mata*, 115 B.R. 288, 291 (Bankr.D.Colo.1990) (finding Colorado exemption for IRAs invalid for this reason). *Cf. In re Sullivan*, 680 F.2d 1131, 1133–36 (7th Cir.1982) (discussing the rule of geographic uniformity).

11. *Cf. Rhodes v. Stewart*, 705 F.2d 159, 163–64 (6th Cir.) (discussing whether § 522(d) implies preemption of state exemption statutes), *cert. denied*, 464 U.S. 983, 104 S.Ct. 427, 78 L.Ed.2d 361 (1983); *First Nat'l Bank v. Norris*, 701 F.2d 902, 905 (11th Cir.1983) (weighing argument that section 522(m) preempts Alabama statute that allows only one homestead exemption to joint debtors); *Cheeseman v. Nachman*, 656 F.2d 60, 63 (4th Cir.1981) (rejecting proffered construction of Virginia homestead exemption for the reason that, as construed, the state exemption would be preempted by section 522(m)).

(2) Other real estate or tangible personal property of four thousand dollars ($4,000).

(3) Intangible personal property, including choses in action (but excluding debts owing and income owing), of one hundred dollars ($100).

(4) Professionally prescribed health aids for the judgment debtor or a dependent of the judgment debtor.

(5) Any interest the judgment debtor has in real estate held as a tenant by the entireties on the date of the filing of the petition for relief under the bankruptcy code, unless a joint petition for relief is filed by the judgment debtor and spouse, or individual petitions of the judgment debtor and spouse are subsequently consolidated.

(6) An interest the judgment debtor has in a pension fund, a retirement fund, an annuity plan, an individual retirement account, or a similar fund, either private or public.

(b) This section does not apply to judgments obtained before October 1, 1977.

(c) The total value of the property exempted under subsection (a)(1) through (a)(3) may not exceed ten thousand dollars ($10,000).

(d) Real estate or personal property upon which a debtor has voluntarily granted a lien is not, to the extent of the balance due on the debt secured by the lien:

(1) subject to this chapter; or

(2) exempt from levy or sale on execution or any other final process from a court.

Ind.Code § 34–2–28–1. The plain wording of the statute reflects an intent to create an exemption, as that term is used in the Bankruptcy Code, rather than to declare an immunity. And the placement of subsection (5) within subsection (a)—a list of exemptions—provides a structural reason to conclude that the legislature intended to create an exemption. The Bank's suggested interpretation is grounded in the assumption that the Indiana legislature intended that subsection (5)—involving entirety property—be read differently from all the other subsections of subsection (a). We cannot attribute to the Indiana legislature such an implausible intent. Moreover, the location of the subsection within the general statute governing real estate exemptions reflects a legislative intent to create an exemption to have effect under section 522(b)(2)(A).

The Bank's suggested interpretation would not only require that we ignore the wording and structure of the statute, but also that we attribute to the Indiana legislature an acute unawareness of the other operative sections of the Code. We cannot assume that the legislators were not aware of the relationship between section 522(b)(2)(A)—permitting the use of state exemptions—and section 522(b)(2)(B)—which incorporates state common law immunity as "applicable nonbankruptcy law." As our colleagues on the Third Circuit properly noted in *Napotnik v. Equibank & Parkvale Savings Association,* 679 F.2d 316, 318–19 (3d Cir.1982), "exempt from process" should not be read to refer to state statutory exemptions, because such exemptions are already accounted for in section 522(b)(2)(A). Rather, "exempt from process" as used in section 522(b)(2)(B) should be read to refer to the immunity from process by individual creditors that state common law may grant to entirety property. *See also Ray v. Dawson,* 14 B.R. 822 (E.D.Tenn.1981). In a state such as Indiana, whose common law grants entirety property immunity from creditors of one spouse alone, the effect of section 522(b)(2)(B)—standing alone and without any reference to state statutory exemptions—is partially to exempt entirety property: the property is subject to sale and distribution to joint creditors, but exempted from claims of individual creditors.[12]

**12.** *See Napotnik,* 679 F.2d at 320–21 (affirming bankruptcy court conclusion that "the debtor's interest in entirety property—to the extent it was subject to a judgment against both the debtor and his spouse on a joint debt—could not qualify for exemption under Section 522(b)(2)(B)"); *see also Sumy v. Schlossberg,* 777 F.2d 921, 926–28 (4th Cir.1985) ("entireties property is not exempt under § 522(b)(2)(B) where a joint creditor holds a judgment against

The Bank's alternative suggestion, that the legislature intended to re-create the pre-Code scheme involving post-discharge proceedings, would also require us to presume that the legislature was unaware of section 363—which enables a trustee to dispose of entirety property to satisfy the claims of joint creditors. We also note that other sections of the new Code would frustrate the intent attributed to the Indiana legislature by the Bank. By allowing the debtor to completely exempt his interest in entirety property from the bankruptcy estate, Indiana has not preserved the amenability of that property to creditors but shielded it from all creditors, including joint creditors. Section 522(c) prevents the assertion of pre-petition claims against exempted property, and section 524(a)(2) enjoins post-discharge proceedings against the debtor for pre-bankruptcy debts. These two sections ensure that no creditor—including a joint creditor—can reach any part of entirety property exempted under the Indiana provision.

### C

The Bank's third argument is that, even if the bankruptcy court and the district court both were correct to conclude that entirety property enters the bankruptcy estate and is exempted under Ind.Code § 34–2–28–1, the net effect upon the joint creditor's ability to reach entirety property is the same as that under the old scheme. Consequently, the old Indiana procedure permitting post-discharge proceedings against the entirety should be allowed to continue. The old Indiana procedure, and its rationale, is illustrated by *First National Bank v. Pothuisje*, 217 Ind. 1, 25 N.E.2d 436 (1940), in which a couple owned a 240-acre farm as tenants by the entirety and obtained a loan from a bank using the farm as security. The husband filed an individual bankruptcy petition and was discharged before the bank was able to obtain a judgment against the couple. Subsequently, the bank sued the couple on the loan. The

trial court sustained the husband's demurrer, and the bank appealed. The court noted that, under the Bankruptcy Act of 1898, a discharge did not bar subsequent action against the debtor, it merely provided the debtor with an affirmative defense to such action:

> A discharge in bankruptcy releases the bankrupt from the obligation of his provable debts, not in the sense that the debts are paid or satisfied, but only that there is afforded the debtor a complete legal defense to actions on such debts if he chooses to avail himself of it. The remedy upon the debts and the legal, but not the moral, obligation to pay are at an end, but the debts are not extinguished or canceled.... [A] proved debt will support a subsequent judgment thereon where the bankrupt does not plead or prove his discharge. It will thus be seen that a discharge from bankruptcy does not destroy the debtor's proved debts, or necessarily bar their future enforcement under some circumstances.

*Id.*, 25 N.E.2d at 438 (citations omitted). The court then reviewed the nature of a note executed by a husband and wife. The court concluded that such a note gives rise to three liabilities: one of each spouse and one of the entirety.

> Such an obligation is more than [a joint and several obligation]; it is also the liability of the separate and distinct legal entity which the law recognizes as arising from the unity of a man and a woman occupying the marital relationship. The obligation to pay is joint and several and it also partakes of the same nature and qualities, the same attributes and characteristics, that distinguish the title to land owned by a husband and wife as tenants by the entireties from that held by them in their individual capacities. When a husband and wife join in executing a note there arises a triple liability....

both spouses"); *Liberty State Bank & Trust v. Grosslight (In re Grosslight)*, 757 F.2d 773, 776–77 (6th Cir.1985) (following *Napotnik*). This partial exemption is given effect by returning to

the debtor and non-debtor spouse, after the entirety property has been sold, that portion of the proceeds that exceeds the valid claims of joint creditors. *See* 11 U.S.C. § 363(j).

*Id.*, 25 N.E.2d at 439. The court further characterized this third liability as "a liability as to their entireties property, which their individual liabilities cannot otherwise touch." *Id.*, 25 N.E.2d at 440. The court then stated that the discharge of one spouse from bankruptcy affects only the individual liability:

> The bankruptcy court discharge[s] only the joint and several aspect of the debt created by the husband and wife. It [does] not afford relief to the bankrupts as to that distinct liability assumed by them in the capacity of a separate entity; that liability, as distinguished from their personal liabilities, [is] as foreign to the protection of a court of bankruptcy as [is] their entireties property to its jurisdiction.... As to property it cannot reach and debts it cannot adjudicate, the judgments and decrees of a court of bankruptcy are inoperative.

*Id.* The court also noted with approval that the Michigan Supreme Court had expressed a similar perspective and had referred to the proceeding on the third liability as a proceeding quasi in rem. *Id.* Finally, the court reversed the decision of the trial court and approved the post-discharge action against the couple. *See also Smith v. Beneficial Fin. Co.*, 139 Ind.App. 653, 218 N.E.2d 921, 923 (1966) (following *Pothuisje* ).

■ Both the bankruptcy court and the district court rejected the Bank's argument on the ground that the old Indiana practice was based upon features of the Bankruptcy Act of 1898 that are not contained in the Bankruptcy Code of 1978. "The rule announced in those cases, even if originally sound, can have no application where the reason given for the rule entirely fails." Bankruptcy Ct. Decision of December 11, 1990, (R. 2, Ex. C) at 15; "When the reason given for the application of a rule fails, the rule itself should not be applied to the case." District Ct. Order of July 11, 1991, (R. 9) at 9. We agree with this reasoning. Under the old Bankruptcy Act, entirety property never entered the bankruptcy estate and could not be touched by the trustee. As discussed above, this is no longer the case: entirety property does enter the

estate and may be sold by the trustee to satisfy claims by joint creditors. In *Pothuisje*, the Indiana Supreme Court relied upon the premise that the bankruptcy court

> [does] not afford relief to the bankrupts as to that distinct liability assumed by them in the capacity of a separate entity; that liability, as distinguished from their personal liabilities, [is] as foreign to the protection of a court of bankruptcy as [is] their entireties property to its jurisdiction.... As to property it cannot reach and debts it cannot adjudicate, the judgments and decrees of a court of bankruptcy are inoperative.

*Pothuisje*, 25 N.E.2d at 440. Under the Code, however, the entirety property is no longer foreign to the jurisdiction of the bankruptcy court; the bankruptcy court can reach entirety property and adjudicate claims of joint creditors. Thus, as the bankruptcy court reasoned, the reason supporting the old Indiana practice no longer exists.

The Bank contends, however, that a separate reason supporting the old Indiana practice does still exist: to check the potential for legal fraud on joint creditors. Even if entirety property does enter the bankruptcy estate and the Code provides a mechanism by which that property can be administered by the trustee for the benefit of joint creditors, Indiana's exemption disables that mechanism and the joint creditors are left without a remedy. Thus, the Bank argues, there is still sufficient reason to follow the old practice and allow joint creditors to pursue post-discharge suits against entirety property. We find it difficult to find fault with the bankruptcy court's explanation:

> In reaching its conclusion, the court recognizes that the exemption the Indiana legislature has created for entireties real estate perpetuates the same potential for legal fraud which was condemned under the Bankruptcy Act. Nonetheless, this possibility is no longer a function of the structure and operation of the bankruptcy laws. It is, instead, the result of a decision the Indiana legislature made to permit its residents to

completely exempt any interest in entireties property from the bankruptcy estate where only one of the two spouses files for relief. This decision cannot be allowed to override the scope and protection of the bankruptcy discharge.

Decision of December 11, 1990, at 15. The potential for legal fraud is attributable to the Indiana statutory exemption, Ind.Code § 34–2–28–1(a)(5), not to provisions of the Bankruptcy Code. As we have already noted, the Bank presents no attack, constitutional or otherwise, on the legitimacy of the state exemption.[13] In the absence of such an infirmity in the statute, our duty is to apply that statute according to its plain meaning, unless or until Congress decides to cabin more specifically the latitude presently granted to each state to define the bankruptcy exemptions afforded to its citizens.

### D

Finally, the Bank argues that the old Indiana practice is not inconsistent with section 524, because it involves a proceeding quasi in rem rather than a proceeding in personam. The Bank further suggests that Congress recognized the propriety of post-discharge proceedings quasi in rem when it amended section 524 in 1984. As noted above, before the 1984 amendment, section 524 provided that a discharge "operates as an injunction against the commencement or continuation of an action ... to collect ... any such debt as a personal liability of the debtor or from property of the debtor." In 1984, this was amended to exclude the phrase "or from property of the debtor." The Bank suggests that the amendment effectuated Congress' intent that discharge preclude only in personam proceedings against the debtor, not in rem or quasi in rem suits against the property of the debtor.

The Bank misconstrues both the purpose of the 1984 amendment to section 524 and the nature of its proposed proceeding. The purpose of the amendment was to clarify that discharge precludes only *actions to establish personal liability*, not actions to enforce a lien against property of the debtor. Cases and commentators agree that Congress intended to resolve the apparent inconsistency between section 524(a)(2) and other portions of the Code, such as section 506(d)—which allows certain liens to pass through bankruptcy unaffected—and section 522(c)(2)—which states that exempt property is still subject to certain liens. *See Davis v. Bank of Iberia (In re Davis),* 99 B.R. 732, 733–34 (Bankr.W.D.La.1989) ("Unavoided liens pass through bankruptcy and survive unaltered in the post-discharge period. The permissibility of post-discharge enforcement of valid liens appears to have been reinforced by the Bankruptcy Amendments and Federal Judgeship Act of 1984...." (citations omitted)); *Stephenson v. United States (In re Stephenson),* 96 B.R. 388, 389 n. 1 (Bankr.S.D.Fla.1988) ("The 1984 amendment of Section 524(a)(2) dropped the language 'from property of the debtor' to clarify the legislature's intent that acts to collect debts from the debtor (personally) be enjoined. The Section does not prohibit a creditor's in rem action against the debtor's property."); *In re McKinstry,* 56 B.R. 191, 193 (Bankr.D.Vt. 1986) ("Although the debt is discharged, the lien survives the discharge under 11 U.S.C. Section 524. This is the result of the 1984 amendments to the Bankruptcy Code, 11 U.S.C. Section 524(a)(2)...."); *Stewart v. Underwood,* 146 Ariz. 145, 704 P.2d 275, 277 (Ct.App.1985) ("Congress thereby clarified its intent to limit the injunction to preclude only actions taken to collect a discharged debt as a personal liability.").[14]

◼ Thus, the 1984 amendment to section 524 makes clear that discharge does not enjoin holders of unavoided liens from

---

**13.** *See supra* nn. 10–11 and accompanying text.

**14.** *Stewart* suggests that the amendment was sparked by *In re Williams,* 9 B.R. 228 (Bankr. D.Kan.1981), in which a bankruptcy court held that, under section 524(a)(2), holders of valid liens were enjoined from pursuing proceedings

in rem. *See also Malone v. Fidelity Nat'l Bank (In re Dunn),* 56 B.R. 275, 279 n. 10 (Bankr. M.D.La.1985) (regarding a garnishment proceeding in rem); 3 *Collier on Bankruptcy* ¶¶ 506.07, 524.01 (1992).

enforcing them against property of the debtor through proceedings in rem. Nonetheless, under section 524 as amended, discharge enjoins creditors from seeking to establish that the discharged debtor is *personally liable* for any pre-petition claim. The Bank is not a lienholder, and it is not seeking to proceed in rem. The Bank's claim against the Hunters is unsecured and unrelated to the entirety property. Thus, before the Bank could assert a claim against the property, it would first have to establish that the Hunters are liable on the claim. The Bank characterizes the proceeding it wishes to bring to assert its claim as one "quasi in rem against the estate held by the entireties." But such a proceeding, however labeled, would involve the personal liability of the discharged debtor, Mr. Hunter.[15] Such an action is barred by section 524, as amended.[16]

### Conclusion

For the foregoing reasons, the judgment of the district court affirming the bankruptcy court's denial of Shipshewana State Bank's Motion to Lift Permanent Injunction and Stay is affirmed.

AFFIRMED.

**15.** *See Harris v. Manufacturers Nat'l Bank,* 457 F.2d 631, 635–36 (6th Cir.) (holding that discharge, under old Bankruptcy Act, precluded "quasi in rem" suit against entireties property), *cert. denied,* 409 U.S. 885, 93 S.Ct. 118, 34 L.Ed.2d 142 (1972); *cf. Rush v. Savchuk,* 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980) (quasi in rem suit to obtain insurance proceeds is suit against the insured and requires the plaintiff to meet in personam jurisdictional standards); *Shaffer v. Heitner,* 433 U.S. 186, 207 n. 22, 97 S.Ct. 2569, 2581 n. 22, 53 L.Ed.2d 683 (1977) ("All proceedings ... are really against persons.").

**16.** Even if the action is characterized as involving the liability of the property rather than the liability of the debtor, it is barred by section 522(c), which provides in relevant part that "property exempted under this section is not liable during or after the case for any debt of the debtor that arose ... before the commencement of the case." 11 U.S.C. § 522(c).